Good afternoon we have one case this afternoon it's the complaint of Christopher Columbus versus Michael Bocchino et al. Mr. Wooster Thank You Judge Hardeman may it please the court Dan Wooster for the three minutes rebuttal. The issue in this case is whether claims against the owner of a commercial passenger vessel for injuries allegedly occurred on a cruise on navigable waters as a result of crew member negligence is a case within the maritime jurisdiction. The claimants here allege that the crew members in the course of this cruise committed numerous acts of negligence over serving alcohol, failing to supervise passengers as they went about the vessel, failing to intervene in an alleged altercation that supposedly took place on the vessel, and failing to provide safe egress from the vessel. Those are all classic maritime negligence claims that are commonly seen in passenger cases. Counselor where do we look what is our source material to ascertain whether there's admiralty jurisdiction here? You look to the pleadings. Are the pleadings here, if we're looking to your client's complaint then what we have is an initial complaint that alleges that the altercation took place following the docking and it incorporates by reference the original state complaint which makes clear on its face that the altercation took place after the boat was docked in the parking lot. As that could be relevant, maybe dispositive to jurisdiction, is that what we're limited to? Do we look to those pleadings? I don't think you're limited to the initial pleadings. If you look at the claims themselves that the passengers have made in the limitation action, they clearly say that the injuries, supposed injuries happened during the cruise as the vessel was docking. Only one of those is contending that he was injured both on the vessel and on the pier immediately after the vessel berthed. Those claims are filed as responsive documents and they contradict the allegations of the original state complaint. Well the original state complaint was a little unclear as to exactly where the assault took place. In a subsequent filing, Mr. Bacchino was effectively equivalent of a Rule 16 conference in state court. He clarified in that memo being submitted to the court that the altercation happened both on the vessel and on the dock after the vessel berthed. So according to his contentions in the state court, and this was before we filed the limitation case, there was a kind of a spillover effect. The altercation began on the vessel and spilled over onto the dock in the close environs of the gangway. You agree that in ascertaining jurisdiction, we should be looking to the documents, not as the district court here did, make an assumption about what those jurisdictional facts might be, taking them in the light most favorable to jurisdiction. Well, the judge did make a factual dispute whether a fight even happened. And in setting up this sua sponte motion or order that he issued, he basically said I'm going to assume that the facts are such that would best support maritime jurisdiction. But that was only a distinction between whether the fight happened after the vessel was already fully secured to the pier or whether it began as the vessel was still coming in to the berth. So that was the only factual resolution, if you want to call it that, that he made in the order. He wasn't, you know, he obviously wasn't, there was no hearing, there was no evidentiary hearing. But in a normal case, in any case that comes before the federal court, you'd ascertain jurisdiction based on what the parties have alleged. And all the allegations here are that this so-called assault happened on the vessel, began on the vessel, and in the case of one claimant it spilled over onto the pier. But in the process of docking? Well, the parties weren't focusing like a laser on that issue because it's not important to the merits of the case. Regardless of where they were focusing, we have to look at what they've pleaded. And there's no allegation as to whether the fight occurred in the middle of the Delaware River. It was, as Judge Krause said, it was in the process of docking. That was the allegation, right? Yeah, the testimony goes to the effect that the vessel was coming in to dock, it was slowly slowing down, coming in to the dock. And as you would expect when five, six, seven different people are deposed, there are slight variations in the facts. But I think that goes to show the problem with telescoping in so closely on, you know, one person's recollection versus another, just to try to find out whether the case belongs in federal court. Right, and the parties agree that location in traditional maritime activity was satisfied, right? That's right. Isn't the focus here on potentially disruptive impact on maritime commerce? Yes, it's as to 1333. All right, well, in our opinion in Hargis, we held no jurisdiction. So tell us why there was not a potentially disruptive impact on maritime commerce in that case, but there is in your case. Well, Your Honor, Hargis is a bit of a one-off case as we see it. There wasn't even any argument in that case from the plaintiff who invoked the court's jurisdiction in that case. It was a one-sided oral argument. No one appeared in the court to defend the lower court's judgment. Right, so it's a little bit of a... If you do that as it may, we have to accept it, unless... Absolutely. You either have to distinguish that case or you have to get this case embanked in order to prevail. Yeah, I think... So why don't you try to distinguish that case? I think you can distinguish it in a number of respects. First of all, there was no allegation in that case that the crew members had committed any act of negligence while the vessel was navigating in a navigable waterway, as there is here. Second point is, and I don't think these are jurisdictionally relevant if you want to be accurate about it, but it was a small motorboat anchored in knee-deep water. Our vessel is 80 feet long, more than 80 feet long. It has three passenger decks. It's a commercial passenger vessel certified to carry 259 passengers, 40 crew members. Just a complete different scale than this motorboat that was run up on the beach in St. John's Cruise Bay Harbor. But more to the point, with all due respect to that panel, I don't think that the way they characterized the incident in that case for purposes of ascertaining commercial disruption was faithful or consistent with the approach that the court en banc set out in Neely, which basically says, follow Grubar to the letter. The incident should be described as damage by a vessel to, and then fill in the blank, who was injured or what was injured. That would have been damage by a vessel to a passenger. And regardless of the rather unique facts in Hargis, any time a passenger is injured on board a vessel in navigable waters, perforce, there's a potential disruption to maritime commerce. And we don't look at the particular facts in the case. That's what Grubart said over and over again. Sisson said the same thing. You come up with a general formulation of what happened, what's the case about on a very general level, and then you can conceive of all different ways that that might interrupt commerce. We look at it at an intermediate level of generality, not just as a general matter. So what would be wrong with looking at the intermediate level of generality here as presenting an altercation between passengers on a vessel in navigable waters in the process of docking? Well, in the process of docking is not a jurisdictionally relevant feature in any case. I mean, if you go back 150 years, vessels have been alongside the dock fully secured. They're not even moving. They're fully secured, and an accident happens on board while the vessel's in port. Isn't it relevant, though, to whether there's a substantial impact on commerce? No, it does not have to be a substantial impact. It has to be a potential impact based on the general features of the incident. How can an altercation that takes place on a boat that's in the dock or just about in the dock disrupt maritime commerce? Well, we don't want to... We don't think it's appropriate to... You're not speculating about that, right? Yeah, it is a form of speculation, but that's what Sisson directed us to do. That case involved no commercial activity at all. Purely private pleasure boats docked at a marina not doing anything. They were actually docked just sitting there overnight when the fire broke out, and the court... That's why I thought you'd be happy with the formulation of in the process of docking because that gets you closer to maritime activity than a ship that's already docked. Well, if the court wants to put that formulation... I mean, that's the inherent problem with the... Your point is that, fine, you'll take it, but that's not... If you can't get in with the court, that's not jurisdictionally relevant. What's jurisdictionally relevant is whether there's a potentially disruptive impact on commerce and even a boat that's been docked for six months, if it catches fire or what have you and burns or causes the dock to be damaged, your argument, as I understand it, is that's potentially disruptive. Exactly. We're looking there at the formulation in its entirety. If the activity that's at issue ends up being a fire on a boat that's docked and has the potential to make the entire... to spread to other boats and to make the pier itself unusable for some period of time, one can see how that would affect maritime commerce. Here, we're dealing with an activity of an altercation, so don't... We need to see something in the location and timing part of this formulation that would get this to affecting maritime commerce for there to be... Absolutely, Your Honor. Assuming we want to get that specific. I don't think that's appropriate, but if we do want to be that specific, an altercation breaks out, what's the first thing the crew is instructed to do? Call the captain. Any time there's a casualty or an incident on board of any serious magnitude, first thing you do is call the captain. At the very time when he's bringing the vessel into the berth, he needs to be paying attention to his navigation, he needs to be paying attention to the wind and the current, his maneuvering with the wheel and the propellers. At the very time he's getting a phone call from down below, there's a massive fight that's broken out, call the Coast Guard. People are hurt. So that's just one example of what could happen. The fight itself could damage the vessel. There's an allegation in our case that tables and chairs were collapsing in the midst of this veritable melee as one claimant described it. That's damage to the vessel. That damage would have to be repaired. The vessel could be taken out of service while that's being done. The vessel is losing money when the vessel is not working. Is your conviction that would be enough to affect maritime commerce? Well, look at the 11th Circuit's case in the Doe versus the cruise line case. That was an assault completely off the vessel, on shore, and they said the mere fact that this is a commercial passenger vessel and the publicity that's inherent when an assault happens, that's going to damage their bookings in future cases if potential customers are going to maybe not take a cruise that they otherwise would have. That was the only basis for a potential interruption in that case, and that was sufficient in their view. That's a little bit perilous, though, isn't it? What's the limiting principle? If negative publicity is enough, is there any tort that could be committed on a cruise vessel that would not be deemed to possibly disrupt maritime commerce? There are some suggestions in some of the case law, Judge Haldeman, that, for example, someone's on a cell phone on the vessel and they make a call to shore and they phone in a defamatory statement to the newspaper or something. The fact that they're standing on the vessel when they make the call has nothing to do with maritime commerce. They could have been standing anywhere, and the vessel's not implicated in that case. The vessel crew's not privy to that conversation. The vessel crew's not being held at fault or attempting to be held at fault for that phone call. So to the extent that tort occurred on the vessel, it had nothing to do with the vessel's operation or its work on the nautical waters. That, you could argue, would be outside the maritime jurisdiction. But for the run of the mill, injury claims... Slip and fall. Slip and fall. Anything that could distract the crew from navigating on the water. In fact, we had one case, I guess, where the vessel wasn't operable and then that caused the tugboat to hit it. So that vessel wasn't operating, but it was in the navigable waterway and it caused a lot of trouble for others. Exactly. So it's not without limit, but you'd concede, would you not, that it's a very, very broad grant of jurisdiction. That's a new argument. And I think if you look at where this connection test arose, Executive Jet's concern was we're getting some oddball cases that fall into the admiralty courts like someone driving off a bridge and ending up in the river. Well, that doesn't belong in the admiralty court  and that's perfectly understandable because it doesn't implicate a vessel. Or swimmers crash into each other on the beach. Well, that's what I don't understand about the Jet case. I don't know why they just didn't say that a plane crashing in a swamp is not a vessel. Well, I think that would have been a more straightforward way to resolve the case and in hindsight... Because clearly a plane in the water does disrupt maritime commerce. Indeed. And if it had crashed on the high seas, it would have been within the jurisdiction under the Dust on the High Seas Act. Should we think of Executive Jet as modifying Section 1333 itself or think about it as a way to interpret constitutional admiralty jurisdiction? Well, the Constitution says all cases of admiralty maritime jurisdiction are within fair game for the federal courts. The original Judiciary Act in 1789 basically parroted that language and said any case of maritime or admiralty jurisdiction is triable in the federal courts. But the Supreme Court has always kind of set up some boundaries in defining what is an admiralty case. I think they're construing the statute. No case that I'm aware of has ever said Congress has passed a statute that's very broad and it surpasses the concept of admiralty that the Constitution sets forth. So Congress has always been free to modify and extend the admiralty jurisdiction. That's what they did in the Genesee Chief case. Originally the jurisdiction was confined to tidal waters. Congress by statute extended it to the Great Lakes and then to the Western Rivers. Both of those extensions were upheld even though at the time of the founding those rivers would not have been considered within the admiralty jurisdiction. It's like an expanding jurisdiction, right? It's adding a limiting principle to it. Yeah, I think it's a jurisprudential limit on 1333 is how I would view it to keep out these oddball swimmer cases. Do we need to agree with that premise to conclude that the Limitations Act would provide an independent basis for jurisdiction? Do you need to... I'm sorry. Do we need to agree with that premise to adopt the position that you would have as taken as to the Limitations Act that provides an independent basis for jurisdiction? Yes. You don't need to take any view. I mean, if you're... Our position is that the Limitation Act itself quite apart from 1333 supplies jurisdiction as the Act was construed in the Richardson case. And the Limitation Act in substance has remained the same as it was then. The operative language now is that the vessel owner may bring an action in a district court of the United States for limitation of liability as provided under this chapter. That's a separate grant of jurisdiction in our view, separate and apart from 1333. And that's effectively the same language that Osborne v. The Bank provided the right to sue and be sued in the circuit courts. And that was considered to be a grant of jurisdiction to hear that kind of a case. But if we accept your argument on that, we're going against seven circuits that have said otherwise, right? You are indeed. But you're going with the Supreme Court and I'm comfortable with our position. I don't... Your first argument is we don't have to get there because the general admiralty... We don't have to. And the third thing is the Admiralty Extension Act itself, which I think there is admittedly a split of authority on that, but I think it's most reasonably construed as an independent grant without piling on this additional jurisprudential limit that developed from Executive Jet. Oh, goodness yoners, I haven't looked at my light in a long time. I'm sorry about that. It's not your fault. We've been lobbing a lot of questions your way and you've answered them. Thank you. We'll see you on the bottle, Mr. Wooster. Let's hear from Mr. Gruber. Talk about youth versus age. The contrast is a little overwhelming for me. May it please the court, my name is Stan Gruber. I'm here on behalf of the claimant appellee, Michael Bocchino. It seems to me that this case graphically illustrates the tension that results when you attempt to engramp the law of admiralty on a factual scenario that typically and traditionally is adjudicated by a state court and jury or the federal court under diversity but by a court and jury as opposed to the law of admiralty. You're saying that when someone's on a pleasure cruise on the Delaware River and they fall off the boat that that would be adjudicated in a state court? No, I'm not saying that. But that's an admiralty case, right? Pardon me? That would be an admiralty case. If they're around me in open waters and he fell off? Absolutely. And what if he's 40 yards from shore and he falls off? I think that would still be an admiralty case. And they're 10 yards from the dock and he falls into the water. Possibly an admiralty case but when you're along the side of the dock it's a whole different scenario. Okay, what case or statute tells us that the line of demarcation between admiralty jurisdiction and non-admiralty is when you're next to the dock? Well, the line of cases that talk about a scenario that can potentially disrupt maritime commerce. The closer you get to that dock the less likely that there's a chance that you're going to realistically disrupt maritime commerce because as the closer you get to that dock the less danger there is that you're going to have to call somebody a coast guard as I've mentioned or another vessel to come and rescue. What if the captain gets really close to the dock as in doesn't calculate the wind properly and knocks the dock to pieces? Admiralty or no? That would be an admiralty case. Sure, because it has great potential to adversely affect maritime commerce. So why? I don't understand why a melee wouldn't at least potentially well, let's start with this. Do you agree that it's a theoretical test not an actual test? That's correct. Okay. So why wouldn't a melee theoretically disrupt maritime commerce because the crew would be distracted by the melee there could be physical injury you'd have to call a coast guard you might have to drop anchor any number of things might be triggered by a melee on a playership like this. I would agree if the vessel was out on the open water but that's not the scenario here it's very important that that vessel is at dockside. Do you agree have you conceded for purposes of our jurisdictional determination that we are  a vessel in the process of docking? Well, I agree that that's that's the scenario that the trial trial court afforded it and I can't really argue with that in my opinion the vessel was already docked and the facts indicate that that was the determination How about the pleadings that we look to for jurisdiction don't the claims that were filed the responsive filing in the district court disavow that the boat was already docked and say explicitly that it was still in the process of docking when the altercation broke out Absolutely and that's absolutely the case it was not a factor that was considered by the trial court unfortunately and not raised by us candidly So why shouldn't we remand this it seems wouldn't it have been prudent for the trial judge to have some jurisdictional discovery So are we here to ascertain the true pleaded facts There was a good deal of discovery that took place in this case we're really working on a record it's almost like a motion for summary judgment really because we're working on a record where there were several depositions taken there were several depositions taken and the reason that the question of jurisdiction came up as you recall is because the judge raised it on his own motion so you don't have the typical type of situation where you have a motion and you don't really have a record here you have a record and based on that record which normally a court wouldn't have in reaching a characterization as the nature of the incident based on the record the trial judge came up with a conclusion that this would be the best way of describing it in the immediate process of docking your client at this point if I understand you correctly and the pleadings that are in the record does not dispute that the boat was in the process of docking when the altercation broke out that the injuries were incurred both on the boat while it was still docking and after it docked the altercation continued in the parking lot we think the facts demonstrate that the vessel was already docked but I think we're bound when the court says it was in the immediate process of docking for purposes of this argument today we're bound by that but don't we look to the allegations in the pleading to establish jurisdiction at the time of the filing in federal court if it turns out in the course of discovery that one witness is determined to be more credible than the other witness and if this effort to have quote jurisdictional discovery end quote that's in fact what happened in some respect I think that's true I think I think that the facts with regard to jurisdiction can be more credible than what the other witness is determined to be more credible than the other witness that is the case that the other witness is determined to be more credible than the other    the case that the other witness is determined to be more credible than the other witness that the other witness is determined to be credible than the  witness is determined to be less credible than the other witness that the other witness is determined to be more credible than       credible than the other witness that the other witness is a more credible witness that the     credible       a credible witness is a credible witness than a credible witness that is a credible witness than a credible witness is a credible witness then the credible witness is a credible witness as a credible witness then a credible witness is a credible witness as  credible witness is a credible witness then a credible witness is a credible witness then a credible witness then he was a a credible  then      witness then he was a credible witness then he was credible witness then were you have the vessel tied up in dock is it realistic though I mean I think you have a really strong argument if realistic means 51% then I think you're going to win but is realistic really I think it's potentially disruptive and the cases seem to suggest that if it's a 1 in 10 10% or maybe even a 5% one of the cases there was a scuba gear was sunk right so the odds of a boat hitting that vessel were probably very slim but you know there's a chance I view realistic as being a definite component and I think that the probability how do we quantify that in our minds I mean I guess that's the problem with the connection test right I'm asking whether potentially is the same as realistic they don't seem to be the same to me potentially seems like a much easier test for your opponents to meet than the realistic test well that's what I think potentially is not that much different than fancifully I mean we know that there are any number of incredible scenarios that can take place but are they realistic is it something that you would expect to happen would you expect that the vessels alongside well I wouldn't expect the melee to break out on the Franklin yacht either but would you expect that that vessel at dockside could harm another vessel or disrupt the waterway or cause a maritime rescue when it's right there at dockside where the police and fire and rescue can be called I mean that's how the trial court looked at it I think that's really the spirit of the hardest cases as well can we go back for a moment because this may have implications for whether we have the facts needed to ascertain jurisdiction or remand is required you seem to be saying earlier that it's now your position that the injuries occurred not on the boat but on the dock and that would contradict the claim of your client that says that he denies that the claimant was assaulted on the vessel following the cruise it is a word on the contrary that the assault was initiated during the course of the cruise while the claimant was still onboard the vessel and the vessel was in the process of being    and the boat and that would contradict your position that those representations in the complaint you're now disavowing Mr. Pacino's position that the injuries took place only on the dock and not on the boat but not on the shore and he really got hammered so we agreed then in the relevant activity that we are assessing for jurisdictional purposes it could be described as an altercation between passengers on a vessel in navigable waters in the process of docking is there any part of that that you disagree with not for purposes of this argument make it simple I mean I don't feel that's an accurate description of what happened I think the vessel was already docked but that would be my interpretation of the facts but it wasn't the trial courts and I don't think I can substitute for purposes of this argument how I feel I feel the facts but it's also by your client's pleading correct and you're not disavowing those pleadings the client said the vessel was in the process of docking I'm reading the language from the claim while claimant was still on board the vessel and the vessel was in the process of docking claimant was assaulted by several other passengers that's what it says I can't argue with that your honor it's essentially a negligence claim right absolutely so where did the negligence take place negligence took place in allowing the people who did the assaulting to be served alcohol when they were drunk so all took place during the  and in not protecting Mr. Bocchino and the other people who were injured when the fight broke out I thought you were going to say the negligence occurred when they charged different prices for the spirits between the two warring factions you can argue that that certainly was a precursor to what occurred that's for sure I guess I should just say that as far as the limitation act and the extension of the act when  wants to give a statute jurisdictional effect it typically says so in very clear language like specifically will say that the jurisdiction is going to be conferred upon the district courts to hear cases under the statute so in the case of both of those statutes you don't have anything specific in the language of the statute that confers jurisdiction the extension act says that jurisdiction is extended to incidents involving damage to persons or property on the shore but that really means that whatever the law is on jurisdiction is extended to those types of cases of course those cases the act was enacted long before the executive jet line of cases the legislative history does not indicate any intention to confer jurisdiction on those cases so the court reports that those two statutes do not confer independent jurisdiction I just want to say real quickly I know my time is up the easiest way to have handled this case would have been to have established a lack of privilege or knowledge of the negligent acts which were alleged here because the owner of the vessel was present throughout the voyage the owner of the vessel was present throughout the voyage but we can only reach those issues that go to liability under the limitations act if we actually have jurisdiction right I'm sorry we can only reach those issues that go to liability under the limitations act if we  have jurisdiction right we have jurisdiction right I'm I'm sorry we can     go to liability